# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# MIAMI DIVISION

| | |
|---|---|
| **LARRY KLAYMAN,** § | |
| § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v.  § | **Case No. 9:20-cv-82039** |
| § | |
| **CABLE NEWS NETWORK, aka CNN;** § | |
| **OLIVER DARCY; and** § | |
| **JEFFREY ZUCKER,** § | |
| § | |
| § | |
| **Defendants.** § | |

## INDIVIDUAL DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND MEMORANDUM OF LAW IN SUPPORT

Laura Lee Prather
Wesley D. Lewis
HAYNES AND BOONE, LLP
600 Congress Avenue, Suite 1300
Austin, Texas 78701
laura.prather@haynesboone.com
wesley.lewis@haynesboone.com
Telephone:   512.867.8400

Dana J. McElroy
THOMAS & LOCICERO, PL
915 Middle River Drive, Suite 309
Fort Lauderdale, Florida 33304
dmcelroy@tlolawfirm.com
Telephone:   954.703.3416

*Attorneys for Defendants*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................................ii

TABLE OF AUTHORITIES ..................................................... **Error! Bookmark not defined.**

I. PRELIMINARY STATEMENT ............................................................................................... 1

II. BACKGROUND ....................................................................................................................... 2

    A.  Plaintiff is a right-wing activist, commentator, and public figure. .................................... 2

    B.  Judy Mikovits accused Dr.................................................................................................. 2

    C.  CNN reported on the Bolling Interview............................................................................. 3

        1.  The Article at Issue ...................................................................................................... 3

        2.  Follow-up Reporting ................................................................................................... 4

III. JURISDICTIONAL FACTS .................................................................................................... 5

    A.  Jeff Zucker has no contacts with Florida. ......................................................................... 5

    B.  Oliver Darcy has no contacts with Florida. ...................................................................... 5

IV. STANDARD............................................................................................................................. 6

V. ARGUMENT............................................................................................................................. 7

    A.  Plaintiff cannot satisfy the statutory requirements of the Florida Long-Arm Statute. .................................................................................................................................. 7

    B.  The exercise of jurisdiction over the Individual Defendants would offend due process. .................................................................................................................................. 9

        1.  This Court does not have general personal jurisdiction over the Individual Defendants because they are not "at home" in Florida............................................... 9

        2.  This Court should not exercise specific personal jurisdiction because Plaintiff's claims do not arise from the Individual Defendants' contacts with the forum state. ............................................................................................... 10

            a.  Plaintiff's claims are not related to Defendants' contacts with the forum............................................................................................................... 10

            b.  The Individual Defendants did not purposefully avail themselves of the protections or the privilege of conducting activities in the forum state. ............................................................................................................ 11

                (i)  The Calder "effects test" does not support a finding of purposeful availment................................................................... 11

                (ii)  Jurisdiction is improper under a traditional "minimum contacts" analysis.......................................................................... 13

        3.  Exercise of jurisdiction over the Individual Defendants would offend traditional notions of fair play and substantial justice. ......................................... 14

VI. CONCLUSION....................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                               **Page(s)**

*Atmos Nation LLC v. Alibaba Grp. Holding, LLC*,
  Case No. 0:15-cv-62104, 2016 WL 1028332 (S.D. Fla. Mar. 15, 2016)...................................7

*Bioheart, Inc. v. Peschong*,
  No. 13-60304-CIV, 2013 WL 1729278 (S.D. Fla. Apr. 22, 2013)....................................13, 15

*Calder v. Jones*,
  465 U.S. 783 (1984)................................................................................................6, 11, 12

*Catalyst Pharm., Inc. v. Fullerton*,
  748 Fed. Appx. 944 (11th Cir. 2018)..............................................................................6, 7, 8, 11

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014).........................................................................................................9

*Edwards v. Schwartz*,
  378 F. Supp. 3d 468, 2019 WL 1295055 (W.D. Va. Mar. 20, 2019) ......................................14

*Five for Entm't S.A. v. Rodriguez*,
  877 F. Supp. 2d 1321 (S.D. Fla. 2012) .................................................................................8

*Franklin v. Anderson Media*,
  2011 WL 3875519 (M.D. Fla. Aug. 31, 2011) .......................................................................7

*Fraser v. Smith*,
  594 F.3d 842 (11th Cir. 2010) ...............................................................................................11

*Future Tech. Today, Inc. v. OSF Healthcare Sys.*,
  218 F.3d 1247 (11th Cir. 2000) ..............................................................................................7

*Internet Sols. Corp. v. Marshall*,
  39 So. 3d 1201 (Fla. 2010)....................................................................................................9

*Keeton v. Hustler Magazine, Inc.*,
  465 U.S. 770 (1984)......................................................................................................11, 13

*Madara v. Hall*,
  916 F.2d 1510 (11th Cir. 1990) ............................................................................................11

*Miller v. Gizmodo Media Group, LLC*,
  383 F. Supp. 3d 1365 (S.D. Fla. 2019) ............................................................8, 9, 10, 11, 13

*Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*,
  No. CV GLR-16-2974, 2017 WL 2778825 (D. Md. June 26, 2017).....................................14

*Prunty v. Arnold & Itkin LLP*,
    753 Fed. Appx. 731 (11th Cir. 2018)..................................................................................6

*Schulman v. Inst. For Shipboard Educ.*,
    624 Fed. Appx. 1002 (11th Cir. 2015)................................................................................7

*Snow v. DirecTV, Inc.*,
    450 F.3d 1314 (11th Cir. 2006) .........................................................................................6

*Sovereign Offshore Servs., LLC v. Shames*,
    No. 17-cv-80172, 2017 WL 7798664 (S.D. Fla. Aug. 3, 2017) ......................................12

*Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*,
    447 F.3d 1357 (11th Cir. 2006) .........................................................................................6

*Thomas v. Brown*,
    504 Fed. Appx. 845 (11th Cir. 2013)..............................................................................2, 3

*VAS Aero Servs., LLC v. Arroyo*,
    868 F. Supp. 2d 1374 (S.D. Fla. 2012) ......................................................................14, 15

*Vision Media TV Grp., LLC v. Forte*,
    724 F. Supp. 2d 1260 (S.D. Fla. 2010) ............................................................................12

**Statutes**

Florida Statute § 48.193 ...............................................................................................................7, 8

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(2) .......................................................................................1, 7

Pursuant to Federal Rule of Civil Procedure 12(b)(2), Defendants Oliver Darcy ("Darcy") and Jeffrey Zucker ("Zucker" and collectively with Darcy, the "Individual Defendants") file this Motion to Dismiss for Lack of Personal Jurisdiction and Memorandum of Law in Support, and state as follows:

## I.
## PRELIMINARY STATEMENT

This is a defamation case arising from CNN's publication of a news story that has absolutely no discernible connection to Florida.

The Individual Defendants live and work in New York City: Darcy is CNN's Senior Media Reporter, and Zucker is the President of CNN Worldwide and Chairman of WarnerMedia News and Sports. On July 24, 2020, CNN published an article focusing on a segment set to air on the nationally syndicated television program *America This Week*. In that interview, controversial virologist Judy Mikovits ("Mikovits") and her attorney, Plaintiff Larry Klayman ("Plaintiff"), suggested that infectious-disease expert Dr. Anthony Fauci is responsible for the creation of the COVID-19 virus. Sinclair ultimately decided that it would not air the interview. In its reporting on this controversy, CNN described Plaintiff as "a right-wing lawyer" who "has a history of pushing misinformation and representing conspiracy theorists." Unhappy by this characterization, Plaintiff sued CNN and the Individual Defendants for defamation, defamation *per se*, and defamation by implication.

All three Defendants are moving to dismiss the lawsuit for failure to state a claim through a separate motion, which is incorporated by reference, and Defendants file this motion without waiving any arguments made therein. But even as a threshold matter, Plaintiff's lawsuit should be dismissed as to the Individual Defendants because he has not shown and cannot show that either of them is subject to personal jurisdiction in Florida. Neither Zucker nor Darcy live in or have significant contacts with Florida, nor do Plaintiff's claims arise out of or relate to any of their purported contacts with the forum state. Florida is not the focal point of the statement at issue, nor was CNN's reporting aimed at or focused on Florida. Because the Individual Defendants and the claims at issue have no connection to this forum, exercising personal jurisdiction over the Individual Defendants would violate Florida's long-arm statute and the Due Process Clause of the United States Constitution. Accordingly, this Court should dismiss Plaintiff's claims against them for lack of personal jurisdiction.

## II.
## BACKGROUND

### A. Plaintiff is an activist, commentator, and public figure.

Plaintiff is an attorney with a history of filing politically-motivated lawsuits designed to advance or promote conservative causes. *See* Compl. ¶ 12 (Dkt. 1) (describing his efforts to "hold the leftist media legally accountable with its 'Leftist Media Strike Force'"). Plaintiff alleges in his Complaint that he is a citizen of Florida and a resident of Palm Beach County. Compl. ¶ 4. Publicly, Plaintiff states that he "divides his time between Miami, Los Angeles, and Washington, D.C." Larry Klayman, *Whores: Why and How I Came to Fight the Establishment*, About the Author (2005).[1] His law firm, Klayman Law Group, P.C., is based in Washington, D.C. and maintains a Los Angeles-area telephone number. *See* Larry Klayman, Attorney at Law, LARRYKLAYMAN.COM (last accessed October 23, 2020) (identifying 2020 Pennsylvania Ave, NW, Suite 345, Washington, DC 20006 as his place of business and (310) 595-0800 as his telephone number). Plaintiff founded two Washington, D.C.-based 501(c)(3) organizations, Judicial Watch and Freedom Watch, that regularly file lawsuits across the country against media organizations that they perceive to be progressive or left-leaning. *See* Judicial Watch Form 990 and Freedom Watch Form 990 documents, both of which are attached hereto as Exhibit A and list Washington, D.C. as their principal place of business. Plaintiff refers to this campaign as the "Leftist Media Strike Force." *See* Compl. ¶ 12; *Leftist Media Strike Force*, www.leftistmediastrikeforce.org (last accessed Oct. 25, 2020) ("Klayman: Help Me Legally Destroy …[the] Media.").

### B. Judy Mikovits accused Dr. Anthony Fauci of manufacturing the COVID-19 virus on national television.

Plaintiff represents Judy Mikovits, a controversial anti-vaccine virologist (though she is not a party to this lawsuit). Compl. ¶ 9. Mikovits is a citizen of California. *See* Compl., Ex. A (Mikovits Affidavit). Together with Plaintiff, Mikovits appeared on the nationally syndicated television program *America This Week* (the "Bolling Interview"). *See Judy Mikovits and Larry Klayman on Sinclair's America This Week*, MEDIAMATTERS.ORG (last accessed Oct. 28, 2020),

---

[1] To support their challenge to personal jurisdiction, Defendants may rely on extrinsic evidence, including "affidavits, documents, or testimony," *see Thomas v. Brown*, 504 Fed. Appx. 845, 847 (11th Cir. 2013), which Defendants incorporate by reference herein.

https://www.mediamatters.org/media/3885491.[2] During this interview, Mikovits and Plaintiff alleged that Dr. Anthony Fauci, the Director of the National Institute of Allergy and Infectious Diseases (NIAID), manufactured the coronavirus strain responsible for the COVID-19 pandemic and sent it to a lab in Wuhan, China. *Id.* Mikovits further stated in an affidavit attached to Plaintiff's Complaint that Dr. Fauci and others in the United States government are engaged in a "conspiracy to delay treatment" of the COVID-19 pandemic for nefarious motives and personal gain.[3] Compl., Ex. A, at 23. Mikovits and Plaintiff discussed their plans to sue Dr. Fauci, as well as Plaintiff's pending litigation in Dallas, Texas against the Chinese government stemming from the pandemic. *See generally* Bolling Interview. Throughout the segment, the chyron on the bottom of the screen reads: "DID DR. FAUCI CREATE COVID-19?" *Id.*

C. **CNN reported on the Bolling Interview.**

In July 2020, the watchdog group Media Matters reported that Sinclair Broadcast Group ("Sinclair") was planning to air the Bolling Interview across the country on its network of local television stations. Darcy began working on an article for CNN that discussed the provocative allegations in the interview, the public controversy surrounding it, and Sinclair's plans to air it nationwide. In connection with his newsgathering and reporting on this story, Darcy did not travel to Florida; nor, to the best of his knowledge, did he call or speak to anyone in Florida. Decl. of Kayvon Oliver Darcy, Exhibit B, at ¶ 10. Darcy attempted to obtain Plaintiff's comments on the interview prior to publication by emailing the Plaintiff at the email address listed on his professional website (www.larryklayman.com), but Plaintiff did not respond to Darcy prior to publication of the article. *Id.* Defendant Zucker had no involvement in the research or writing of CNN's reporting on the Bolling Interview. Decl. of Jeffrey Zucker, Exhibit C, at ¶ 8.

1. *The Article at Issue*

On July 24, 2020, CNN published Darcy's article, entitled *Local TV stations across the country set to air discredited 'Plandemic' researcher's conspiracy theory about Fauci* (the

---

[2] Plaintiff and Mikovits both appeared on the interview through videoconference feeds from unspecified locations. *Id.*

[3] Mikovits herself is not a party to this litigation, nor does her affidavit testimony relate to the allegedly defamatory statements made about Klayman—beyond perhaps illustrating their truth (that Klayman represents conspiracy theorists).

"Article at Issue"), attached hereto as Exhibit D.[4] The article focused on Sinclair's decision to invite Mikovits to participate in an interview and its plan to air the video nationwide, despite her affiliation with discredited conspiracy theories and past history of promoting misinformation. Mikovits, the article explained, was "the medical researcher featured in the discredited '*Plandemic*' video that went viral earlier this year and which was banned from platforms such as Facebook and YouTube" for promoting misinformation that could lead to imminent harm. The article makes passing references to Plaintiff, including the statement that he is "a right-wing lawyer who also has a history of pushing misinformation and representing conspiracy theorists." *Id.* The statement links to a 2014 *Washington Post* article, which focuses on a federal lawsuit that the Plaintiff filed in Washington, D.C. against the federal government. *Id.* (citing Abby Ohlheiser, *Larry Klayman is suing the federal government because of Ebola. Yes, really.*, THE WASHINGTON POST (Oct. 14, 2014), https://www.washingtonpost.com/news/the-fix/wp/2014/10/14/larry-klayman-is-suing-the-federal-government-because-of-ebola-yes-really). That lawsuit, which was voluntarily dismissed, alleged that Ebola was a biological weapon that the Obama Administration allowed into the country to advance terrorist interests against Americans of the "Caucasian race and Jewish-Christian heritage." *See* Abby Ohlheiser, *Larry Klayman is suing the federal government because of Ebola. Yes, really.*, THE WASHINGTON POST (Oct. 14, 2014), https://www.washingtonpost.com/news/the-fix/wp/2014/10/14/larry-klayman-is-suing-the-federal-government-because-of-ebola-yes-really.

### 2.    *Follow-up Reporting*

In response to the public controversy surrounding the airing of the Bolling Interview, Sinclair initially decided, on July 25, 2020, to delay the broadcast of the interview to "rework" the segment. That same day, Defendants reported on this development, including Bolling's further comment conceding that the "segment does need to be reworked to provide better context." Oliver Darcy, *Sinclair says it will postpone and 'rework' segment featuring conspiracy theory about Fauci*, CNN.COM (July 25, 2020), https://www.cnn.com/2020/07/25/media/sinclair-pulls-fauci-conspiracy-segment., Darcy renewed his request for comment to Plaintiff. Plaintiff responded by standing by the claims Mikovits made in the Bolling Interview and threatening litigation against Defendants. *See* Parties' pre-suit correspondence, attached hereto as Exhibit E.

---

[4] Oliver Darcy, *Local TV stations across the country set to air discredited 'Plandemic' researcher's conspiracy theory about Fauci*, CNN.COM (July 24, 2020), https://www.cnn.com/2020/07/24/media/sinclair-fauci-conspiracy-bolling/index.html.

Darcy incorporated this response in the piece, stating: "After this story was originally published, Larry Klayman, an attorney for Mikovits, wrote in an email on Saturday night that he stood by what his client said on Bolling's show. Klayman also threatened to sue CNN." Darcy, *Sinclair says it will postpone and 'rework' segment featuring conspiracy theory about Fauci*, *supra*. Sinclair ultimately determined that it would not air the Bolling Interview, citing "the nature of the theories . . . presented." In the wake of this announcement, Darcy updated readers about this new development. Oliver Darcy, *Sinclair drops segment featuring conspiracy theory about Fauci*, CNN (July 27, 2020), https://www.cnn.com/2020/07/27/media/sinclair-fauci-conspiracy/index.html.

### III.
### JURISDICTIONAL FACTS

**A.**     **Jeff Zucker has no contacts with Florida.**

Defendant Jeff Zucker lives and works in New York City, New York. Zucker Decl. at ¶¶ 2-3. Plaintiff alleges "on information and belief . . . [that Zucker] is a citizen and resident of the state of Florida." Compl. ¶ 6. This allegation is false: in reality, Zucker is domiciled in New York and has not resided in Florida for many years. Zucker Decl. at ¶¶ 3-4. At all times relevant to this lawsuit, Zucker has remained a citizen of, and domiciled in, New York. *Id.* ¶ 3. He does not own, lease, possess, or maintain any real or personal property in Florida. *Id.* ¶ 5. He does not maintain any bank or other accounts in Florida; he does not have a motor vehicle registered in Florida. *Id.* ¶ 6. He does not vote or file taxes in Florida. *Id.* Zucker does not regularly transact business in Florida: he does not personally maintain an office in Florida or have in his individual capacity any employees or agents in Florida. *Id.* ¶ 7. He does not regularly travel to Florida for business, maintain any professional licenses in Florida, or have a telephone listing in Florida. *Id.* Zucker was not involved in the research or writing of the Article at Issue. *Id.* ¶ 8.

**B.**     **Oliver Darcy has no contacts with Florida.**

Defendant Darcy lives and works in New York City, New York. Darcy Decl. at ¶¶ 2-3. At all times relevant to this lawsuit, Darcy has been domiciled in New York. *Id.* ¶ 3. He does not and has never maintained a residence in Florida. *Id*. ¶¶ 4-5. He does not own, lease, possess, or maintain any real or personal property in Florida. *Id.* ¶ 6. He does not maintain any bank or other accounts in Florida or have a motor vehicle registered in Florida. *Id.* ¶ 7. He does not vote or file taxes in Florida. *Id.* He also does not regularly transact business in Florida. *Id.* ¶ 8. He does not

maintain an office in Florida, personally have any employees or agents in Florida, maintain any professional licenses in Florida, or have a telephone listing in Florida. *Id.* ¶ 8. Darcy does not regularly travel to Florida on business. *Id.* ¶ 9. In 2017, he traveled to Florida to report on Hurricane Irma, but to the best of his recollection, that was the last time he traveled to Florida on business. *Id.*

Darcy's newsgathering and reporting for the Article at Issue did not include any activity in or targeting the forum state. He did not travel to Florida, conduct any interviews in Florida, make any telephone calls to Florida telephone numbers or otherwise direct any newsgathering efforts to the forum state. *See id.* ¶ 10. Darcy sought comment from Plaintiff via email in the lead-up to the publication of the Article at Issue, but he was not aware that the Plaintiff was a resident of Florida at the time. *Id.* ¶ 11. In fact, Darcy believed that Plaintiff was based in Washington, D.C., because he obtained Plaintiff's email address from his professional website, www.larryklayman.com, which identifies his principal place of business as 2020 Pennsylvania Ave, NW, Suite 345, Washington, D.C. 20006. *Id.*

## IV.
## STANDARD

To establish personal jurisdiction over a nonresident defendant, a plaintiff "bears the initial burden of alleging in the complaint sufficient facts to make out a *prima facie* case of jurisdiction." *Catalyst Pharm., Inc. v. Fullerton*, 748 Fed. Appx. 944, 946 (11th Cir. 2018). Vague and conclusory allegations do not satisfy this burden. *See Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1318 (11th Cir. 2006). Rather, a plaintiff must "present enough evidence to withstand a motion for directed verdict." *Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino*, 447 F.3d 1357, 1360 (11th Cir. 2006) (quotation omitted).

Where, as here, the defendant challenges jurisdiction by submitting affidavit evidence in support of its position, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Prunty v. Arnold & Itkin LLP*, 753 Fed. Appx. 731, 734 (11th Cir. 2018). A party's contacts with a forum state must be assessed individually and cannot be judged according to his or her employer's activities in that state. *See Calder v. Jones*, 465 U.S. 783, 789 (1984) ("Each defendant's contacts with the forum State must be assessed individually.").

In deciding a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the Court must undertake a two-part analysis. First, it must determine

whether the Florida long-arm statute provides a basis for personal jurisdiction. *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir. 2000). The interpretation of this statute is a question of Florida law. *Catalyst Pharm., Inc.*, 748 Fed. Appx. at 946. If the statute is satisfied, the Court must then address whether sufficient minimum contacts exist between the defendant and Florida to satisfy traditional notions of fair play and substantial justice under the Due Process Clause of the Fourteenth Amendment. *See Future Tech Today, Inc.*, 218 F.3d at 1249.

## V.
## ARGUMENT

It would be improper for this Court to exercise personal jurisdiction over either Individual Defendant in this case. Except for the plainly incorrect allegation that Zucker lives in Florida, the allegations in the Complaint are not sufficient to create a *prima facie* case of jurisdiction over the Individual Defendants under Florida's long-arm statute. *See* FLA. STAT. § 48.193. Even if exercise of personal jurisdiction were consistent with the long-arm statute, exercise of jurisdiction in this case would violate the Due Process Clause of the Fourteenth Amendment.

**A.     Plaintiff cannot satisfy the statutory requirements of the Florida Long-Arm Statute.**

Plaintiff does not identify which section of the long-arm statute allegedly applies to Darcy and Zucker; this alone is a sufficient basis for dismissal. *See Franklin v. Anderson Media*, 2011 WL 3875519, at *4 (M.D. Fla. Aug. 31, 2011). Further, under Florida's long-arm statute, a non-resident defendant can be subject to personal jurisdiction only under specific limited circumstances; none of which apply. *See Atmos Nation LLC v. Alibaba Grp. Holding, LLC*, Case No. 0:15-cv-62104, 2016 WL 1028332, at *2 (S.D. Fla. Mar. 15, 2016).

The first way in which a non-resident defendant may be subject to personal jurisdiction is through a court's exercise of general jurisdiction—that is, jurisdiction over any claims brought against a defendant, regardless of whether they involve the defendant's activities in Florida. *See* FLA. STAT. § 48.193(2). General jurisdiction is only appropriate under the Florida long-arm statute if a defendant engages in "substantial and not isolated activity" in the state. *Id.*; *see also Schulman v. Inst. For Shipboard Educ.*, 624 Fed. Appx. 1002, 1005 (11th Cir. 2015). As established through the accompanying affidavits, neither Zucker nor Darcy engages in "substantial and not isolated activity" in the forum state. They do not live or work in Florida.

Zucker Decl. ¶¶ 2-4; Darcy Decl. ¶¶ 2-5. They do not own, lease, or maintain any property or assets in Florida. Zucker Decl. ¶¶ 5-6; Darcy Decl. ¶¶ 5-6. They do not regularly conduct business in Florida or travel to Florida on business. Zucker Decl. ¶ 7; Darcy Decl. ¶¶ 8-9. Accordingly, the general jurisdiction provision of the Florida long-arm statute, cannot serve as a basis for the exercise of general personal jurisdiction over Individual Defendants.

The only other plausible statutory basis for jurisdiction under Florida law is the portion of the long-arm statute that confers jurisdiction over foreign defendants "for any cause of action arising from . . . [c]omitting a tortious act within this state." FLA. STAT. § 48.193(1)(a)(2). However, Plaintiff has not alleged any facts that would, if true, constitute the commission of a tortious act in Florida. A nonresident "commits the tortious act of defamation in Florida for purposes of Florida's long-arm statute when the nonresident makes allegedly defamatory statements about a Florida resident by posting those statements on a website, provided that the website posts containing the statements are accessible in Florida *and accessed in Florida*." *Catalyst Pharm., Inc. v. Fullerton,* 748 Fed. Appx. 944, 947 (11th Cir. 2018) (quoting *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1216 (Fla. 2010)) (emphasis added) ("the material posted on the website about a Florida resident must not only be accessible in Florida, but also be accessed in Florida to constitute the commission of the tortious act of defamation within Florida under section 48.193(1)(b).") (emphasis in original). Here, Plaintiff does not allege that the Article at Issue was accessed by a third party in Florida. *See generally* Compl. Therefore, Plaintiff has failed to allege that Defendants committed any tortious act in Florida for purposes of satisfying the Florida long-arm statute. This alone is dispositive of the question of personal jurisdiction, warranting dismissal of Plaintiff's claims against the Individual Defendants. *See Miller v. Gizmodo Media Group, LLC*, 383 F. Supp. 3d 1365, 1372 (S.D. Fla. 2019) (holding that plaintiff's failure to plead that an allegedly defamatory article was accessed in the forum state required dismissal of plaintiff's claim for lack of personal jurisdiction).

Additionally, Plaintiff's Complaint fails to establish that Zucker committed a tortious act in the state because the Complaint does not allege that he published any statement at all, in Florida or elsewhere. To state a claim for defamation, a plaintiff must plead that "the defendant published a false statement about plaintiff to a third party." *Five for Entm't S.A. v. Rodriguez*, 877 F. Supp. 2d 1321, 1329 (S.D. Fla. 2012) (dismissing defamation claim that did not allege publication as to a particular defendant). Here, Plaintiff does not claim Zucker made any

allegedly defamatory statement. *See* Compl. ¶ 18 (alleging only that Zucker "caused, directed, and ratified" Darcy's statement). Because Plaintiff did not allege that Zucker published any statements, much less published any statements *in Florida*, Plaintiff cannot establish that Zucker committed a tortious act in Florida for purposes of establishing personal jurisdiction. *See Miller*, 383 F. Supp. 3d at 1372 (dismissing defamation claim for failing to allege publication of defamatory statement accessed in Florida). Thus, neither Individual Defendant should be subject to personal jurisdiction under the Florida long-arm statute—particularly Zucker, who is not alleged to have even made a statement.

B. **The exercise of jurisdiction over the Individual Defendants would offend due process.**

Regardless of Plaintiff's infirm pleading failing to establish access/publication in Florida, the exercise of personal jurisdiction over Defendants is improper considering the constitutional guarantees contained in the Due Process Clause of the Fourteenth Amendment. Even if this Court were to conclude that Plaintiff's Complaint satisfies the initial threshold of sufficiently alleging personal jurisdiction under Florida's long-arm statute, it must next turn to the "more restrictive" Due Process Clause analysis. Under this even more exacting standard, this Court should decline to exercise personal jurisdiction over the Individual Defendants because doing so would conflict with due process. *Internet Sols. Corp. v. Marshall*, 39 So. 3d 1201, 1216 (Fla. 2010) (concluding that the second, constitutional prong of the jurisdictional test is "more restrictive" than the state's long-arm statute).

As the Supreme Court clarified in *Daimler AG v. Bauman*, the Court must determine whether due process permits the exercise of general or specific personal jurisdiction over a given defendant. 134 S. Ct. 746, 754-55 (2014). Here, neither basis is appropriate to confer personal jurisdiction over either of the Individual Defendants.

1. *This Court does not have general personal jurisdiction over the Individual Defendants because they are not "at home" in Florida.*

First, general jurisdiction is consistent with due process only where a defendant's contacts with the forum state are "so 'continuous and systematic' as to render [them] at home in the forum state." *Daimler*, 134 S. Ct. at 761 (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)). For an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Id.* at 760. If those criteria are not present, a

court may exercise general jurisdiction consistent with due process only in exceptional cases." *Id.* at 761 n.19.

Here, neither of the Individual Defendants are "at home" in Florida: both Zucker and Darcy are domiciled in New York, and at all times relevant to this lawsuit, both Individual Defendants lived and worked in New York. Zucker Decl. ¶¶ 3-4; Darcy Decl. ¶¶ 3-4. Nor is this an "exceptional case" that would justify a finding of general personal jurisdiction over the Individual Defendants in a forum in which they are not domiciled: Darcy has no connection to Florida, and although Zucker did grow up in Florida, he has not been "at home" in Florida during any relevant time period for the purpose of this litigation. *Id.* Accordingly, this Court should not exercise general personal jurisdiction over the Individual Defendants here.

> 2. **This Court should not exercise specific personal jurisdiction because Plaintiff's claims do not arise from the Individual Defendants' contacts with the forum state.**

Because general personal jurisdiction would not comport with due process, Plaintiff must establish that the exercise of specific personal jurisdiction would be appropriate. In the Eleventh Circuit, courts apply a three-part test to determine whether the exercise of specific personal jurisdiction is consistent with due process. *Miller*, 383 F. Supp. 3d at 1372. Courts examine "whether: (1) the plaintiff's claims arise out of or relate to at least one of a defendants' contacts with the forum; (2) the nonresident defendant purposefully availed himself of the privilege of conducting activities in the forum state, thereby invoking the benefit of the forum state's laws; *and* (3) the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice." *Id*. The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant may still prevail on a motion to dismiss if he or she makes a compelling case that the exercise of jurisdiction would violate the traditional notions of fair play and substantial justice. *Id.*

> a. <u>Plaintiff's claims are not related to Defendants' contacts with the forum.</u>

For specific personal jurisdiction, a plaintiff's claim must "arise out of or relate to at least one of the defendant's contacts with the forum." *Id.* Here, Plaintiff's claims all arise from the Article at Issue, which was published worldwide on the internet. As discussed above, *see* Section V.A, *supra*, Plaintiff has not alleged that any third parties accessed the Article at Issue in Florida, *see generally*, Compl., which is necessary to establish a connection between Plaintiff's claims

and Defendants' contacts with the forum. *Catalyst Pharm., Inc. v. Fullerton,* 748 Fed. Appx. 944, 947 (11th Cir. 2018). Thus, in this case, Plaintiff has failed to allege facts that would establish the necessary "direct causal relationship" between the Individual Defendants' contacts with Florida and Plaintiff's defamation claims.[5] Thus, for the same reason that Plaintiff failed to allege facts sufficient to serve as a basis for personal jurisdiction under the Florida long-arm statute, Plaintiff has also failed to allege that Plaintiff's claims are related to the Individual Defendants' contacts with the forum. Therefore, Plaintiff has not met this more stringent requirement to establish that the exercise of jurisdiction in this instance complies with the due process clause.

> b. *The Individual Defendants did not purposefully avail themselves of the protections or the privilege of conducting activities in the forum state.*

In intentional tort cases, courts may assess the "purposeful availment" prong using two independent inquiries: the *Calder* "effects test," as articulated in *Calder v. Jones*, 465 U.S. 783, 789 (1984), and the "traditional minimum contacts" test employed in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779-80 (1984). *See Miller*, 383 F. Supp. 3d at 1373 (citing *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1352 (11th Cir. 2013)). Regardless of the test, the outcome is the same: Plaintiff fails to establish personal jurisdiction.

> (i) *The Calder "effects test" does not support a finding of purposeful availment.*

First, under the *Calder* "effects test," a single tortious act may establish purposeful availment when the tort: (1) was intentional; (2) was aimed at the forum state; and (3) caused harm that the defendant should have anticipated would be suffered in the forum state. *Id*. Here, neither the second nor the third prong are satisfied as to the Individual Defendants.

In *Calder*, the Supreme Court analyzed personal jurisdiction in the context of a nationwide publication—the *National Enquirer*—in which "California [was] the focal point both of the story and of the harm suffered." *Calder*, 465 U.S. at 788-89. It found that the allegedly

---

[5] *See Fraser v. Smith*, 594 F.3d at 842, 850 (11th Cir. 2010) (under Florida law, specific jurisdiction requires a "direct causal relationship among the defendant, the forum, and the litigation" (quotations omitted)); *see also Madara v. Hall*, 916 F.2d 1510, 1518 (11th Cir. 1990) (exercise of specific jurisdiction inappropriate where activities in the forum state were not related to activity for which defendant was being sued); *cf. Miller*, 383 F. Supp. 3d at 1372-73 (relatedness prong required Plaintiff's defamation claim to arise from internet post that was "accessible to *and accessed by*" Florida residents).

defamatory story was solely about "the California activities of a California resident," observing that the report "impugned the professionalism of an entertainer whose television career was centered in California"; that the article "was drawn from California sources"; and that "the brunt of the harm, in terms both of respondents' emotional distress and the injury to her professional reputation, was suffered in California." *Id.* Because it was true that most of the harm would be felt in California, and it was clear that the defendant was aware of that fact, the Court held that exercise of personal jurisdiction did not offend due process. *Id.* at 789-90.

        The facts of this case are substantially different from the facts of *Calder*. Unlike *Calder*, Defendants' actions were not "expressly aimed" at Florida: the Article at Issue does not mention Florida or any of Plaintiff's actions in Florida. *See* Ex. D (Article at Issue). In fact, the subject matter of the Article at Issue did not focus on any events or occurrences in Florida. *Id.* Instead, it reported on the Bolling Interview, which in turn focused on Plaintiff's California-based client, who appeared on a Washington, D.C.-based television program to discuss a conspiracy that allegedly took place at Fort Detrick, Maryland, and Plaintiff's litigation in Dallas, Texas. Unlike the facts in *Calder*, this is not a case in which the focus of the subject-matter of the Article at Issue bears any connection to the forum in which Defendants are challenging jurisdiction. Defendants also did not travel to Florida, knowingly speak to anyone in Florida, or interview any Florida sources in connection with the Article at Issue. *See* Darcy Decl. ¶¶ 10-11. Zucker Decl. ¶ 8. None of the Article at Issue targeted Florida or focused on issues of special relevance to Florida. *Vision Media TV Grp., LLC v. Forte*, 724 F. Supp. 2d 1260, 1266 (S.D. Fla. 2010) (dismissing libel suit for lack of personal jurisdiction where there was no evidence "showing that the website at issue targeted Florida or that Defendants acted to aim their conduct at a Florida audience"). "Defendant's awareness that consumers across the nation may access his . . . [reporting] is not enough to support the exercise of personal jurisdiction." *Sovereign Offshore Servs., LLC v. Shames*, No. 17-cv-80172, 2017 WL 7798664, at *3 n.4 (S.D. Fla. Aug. 3, 2017). Thus, under this prong of the *Calder* "effects test," the Individual Defendants did not "aim" any of their conduct at the forum state.

        Additionally, the Individual Defendants had no reason to believe the "brunt" of Plaintiff's injury would be felt in Florida. Although Plaintiff alleges that he is a Florida resident for purposes of this lawsuit, he holds himself out on his professional website as someone who is based in Washington, D.C. His law firm, Klayman Law Group, P.A., is headquartered in

Washington, D.C.—as are the two non-profits he founded, Freedom Watch and Judicial Watch.[6] Thus, unlike *Calder*, the Individual Defendants had no reason to believe the "brunt" of Plaintiff's injury would be felt in Florida. Indeed, Defendants did not have any reason to believe that Plaintiff was located in Florida, as opposed to any other state. *See Bioheart, Inc. v. Peschong*, No. 13-60304-CIV, 2013 WL 1729278, at *5 (S.D. Fla. Apr. 22, 2013) (finding defendant who posted allegedly defamatory statements about Bioheart on website message board did not purposefully direct his tortious acts toward Florida because there was "no reason for [defendant] to have thought that Bioheart's investors would be located in Florida, as opposed to any other state" (alteration added)). In fact, because Darcy obtained Plaintiff's email from his professional website, which lists Washington, D.C. as his place of business, Darcy believed that Plaintiff was based in Washington, D.C. when he emailed him for comment. *Id.* ¶ 11. Plaintiff therefore cannot establish that either of the Individual Defendants purposefully directed the statement at issue to Florida under the *Calder* effects test.[7]

(ii) *Jurisdiction is improper under a traditional "minimum contacts" analysis.*

Nor can Plaintiff establish purposeful availment under the traditional minimum contacts test. *See Keeton*, 465 U.S. at 772. Under this test, a court must assess whether a defendant's contacts with the forum "(1) are related to the plaintiff's cause of action; (2) involve some act by which the defendant purposefully availed himself of the privileges of doing business within the forum; and (3) are such that the defendant should reasonably anticipate being hailed into court in the forum." *Miller*, 383 F. Supp. 3d at 1374 (quoting *Louis Vuitton*, 736 F.3d at 1357). A defendant's mere awareness that a portion of readers of an allegedly defamatory statement may be in a particular forum state is not sufficient to establish minimum contacts. *Id.* at 1375. Rather, an allegedly defamatory statement must have a "Florida focus" to establish purposeful availment under the minimum contacts test. *See id.* (holding an allegedly defamatory Tweet did not create personal jurisdiction over a non-resident defendant where the allegedly defamatory statement had no "Florida focus"). As this Court observed in *Miller*, a growing number of courts across the country are reaching the consensus that a statement published online is insufficient to establish

---

[6] *See* Exhibit A.

[7] Again, the exercise of personal jurisdiction over Zucker is particularly inappropriate under these facts, where Plaintiff has failed to allege that Zucker published any defamatory statement at all, much less a statement purposefully directed at Florida. *See* Section V(A), *supra*.

personal jurisdiction absent some evidence that the allegedly defamatory statement is tailored to an audience in the forum state or evidence that a defendant specifically "marketed or circulated the article" to individuals in the forum state. *Id.* (quoting *Vangheluwe v. Got News, LLC*, 365 F. Supp. 3d 850, 863 (E.D. Mich. 2019); *see also Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*, No. CV GLR-16-2974, 2017 WL 2778825, at *7 n.8 (D. Md. June 26, 2017) ("[E]ven assuming that the Twitter users reside in Maryland, [the defendant's] tweets are insufficient minimum contacts between [d]efendants and Maryland." (alterations added)); *Edwards v. Schwartz*, No. 7:18-cv-378, 378 F. Supp. 3d 468, 494, 2019 WL 1295055, at *14 (W.D. Va. Mar. 20, 2019) (holding that a defendant did not purposefully avail himself of Virginia's laws, even where defendant's reputation may have been "damaged in Virginia," because the defendant never took "affirmative steps to direct these communications into Virginia" and never "had any intent to target or focus on Virginia readers.").

Here, the Article at Issue has no "Florida focus" that could serve as a basis for finding that jurisdiction is proper. The substance of the Article at Issue has no connection to Florida; instead, it focuses on an interview of a California resident on a nationally syndicated radio show produced in the Washington, D.C. metro area. Additionally, neither Individual Defendant took affirmative steps to direct the statement at issue to Florida, and there is no evidence that the Article at Issue was tailored to a Florida audience or otherwise marketed specifically to Florida readers (as opposed to CNN's readers generally). Thus, under this rubric, Plaintiff cannot establish purposeful availment under the minimum contacts test, rendering the exercise of personal jurisdiction over the Individual Defendants improper.

### 3. *Exercise of jurisdiction over the Individual Defendants would offend traditional notions of fair play and substantial justice.*

Even if Plaintiff established that the Individual Defendants had minimum contacts with Florida, jurisdiction over them would not comport with traditional notions of fair play and substantial justice. This Court looks to five factors when making this assessment: "(1) 'the burden on the defendant;' (2) 'the forum State's interest in adjudicating the dispute;' (3) 'the plaintiff's interest in obtaining convenient and effective relief;' (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies;' and (5) any 'shared interest of the several States in furthering substantive social policies.'" *VAS Aero Servs., LLC v. Arroyo*, 868 F. Supp. 2d 1374, 1380–81 (S.D. Fla. 2012) (quoting *Burger King Corp. v. Rudzewicz*, 461 U.S. 462, 477 (1985)).

In this case, both Individual Defendants reside in New York. *Bioheart, Inc.*, 2013 WL 1729278, at *5 (holding that defendants' out-of-state residence weighed against exercising jurisdiction). Moreover, although Plaintiff alleges that he lives in Florida, Plaintiff has not set forth any particular interest that Florida has in adjudicating this dispute, involving New York Defendants publishing a news story with no discernible connection to Florida. *See id.* (lack of particularized interest in adjudicating dispute in Florida weighs against finding of jurisdiction). Indeed, all the allegedly tortious actions Defendants took happened outside the forum state, and there is no showing that any evidence or witnesses may be located in Florida, other than Plaintiff—who himself purports to split time between Miami, Los Angeles, and Washington, D.C. Larry Klayman, *Whores*, About the Author (2005). Thus, there is no apparent reason why litigating this case in Florida would be more convenient or effective than doing so elsewhere. Accordingly, as the remaining factors do not weigh strongly in favor of jurisdiction, forcing the Individual Defendants to litigate this case in Florida would violate traditional notions of fair play and substantial justice, and therefore, the exercise of personal jurisdiction would be improper. *See id.*

## VI. CONCLUSION

For the foregoing reasons, Defendants Darcy and Zucker respectfully request that this Court dismiss Plaintiff's Complaint against them with prejudice.

Date: November 13, 2020                    Respectfully submitted,

By: */s/ Dana McElroy*
Dana J. McElroy
dmcelroy@tlolawfirm.com
Florida Bar No.: 845906
**THOMAS & LOCICERO, PL**
915 Middle River Drive, Suite 309
Fort Lauderdale, Florida 33304
Telephone:     (954) 703-3416
Telecopier:     (954) 400-5415

Laura Lee Prather[*]
laura.prather@haynesboone.com
Texas Bar No.: 16234200
Wesley D. Lewis[*]
wesley.lewis@haynesboone.com
Texas Bar No.: 24106204
**HAYNES AND BOONE, LLP**
600 Congress Avenue, Suite 1300
Austin, Texas 78701
Telephone:     (512) 867-8400
Telecopier:     (512) 867-8470
[*] Admission *pro hac vice* pending

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this **13th** day of **November, 2020,** I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all parties and counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing, and has been served this same day via electronic mail and U.S. Mail upon:

    Larry Klayman, Esq., *Plaintiff pro se*
    7050 W. Palmetto Park Road
    Boca Raton, FL 33433
    Email: leklayman@gmail.com
         klaymanlaw@gmail.com

By: */s/ Dana J. McElroy*
    Dana J. McElroy