# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| LARRY KLAYMAN  Plaintiff  v.  CABLE NEWS NETWORK, et al  Defendants. | Case Number:   0:20-cv-82039 |

## PLAINTIFF LARRY KLAYMAN'S OPPOSITION TO DEFENDANTS DARCY AND ZUCKER'S MOTION TO DISMISS

Dated: February 25, 2021                                  Respectfully Submitted,

                                                          /s/ Larry Klayman
                                                          Larry Klayman, Esq.
                                                          7050 W. Palmetto Park Rd
                                                          Boca Raton, FL, 33433
                                                          Telephone: (561)558-5336
                                                          Email:leklayman@gmail.com

                                                          *Pro Se*

## **MEMORANDUM OF LAW**

Plaintiff Larry Klayman ("Mr. Klayman") hereby submits the following in opposition to Defendants Cable News Network ("Defendant CNN"), Jeffrey Zucker ("Defendant Zucker") and Oliver Darcy's ("Defendant Darcy") Motion to Dismiss. ECF No. 6.

**I.      INTRODUCTION**

The case centers around a false, malicious, and defamatory article published on or around July 25, 2020 titled "*Local TV stations across the country set to air discredited 'Plandemic' researcher's conspiracy about Fauci.*" (the "Darcy Article"). This article, written by Defendant Darcy, made the false, malicious, and defamatory statement, that "Larry Klayman, a right-wing lawyer, has a history of pushing misinformation and representing conspiracy theorists." This was written at the direction of Defendant Zucker, and was ratified and condoned by Defendant Zucker as well.

The motivation for this false, malicious and defamatory statement was to attempt to discredit Mr. Klayman, and by association, his client, Dr. Judy Mikovits ("Dr. Mikovits"), a renowned virologist who had stated in an interview that Dr. Anthony Fauci had sent the seeds of the COVID-19 virus from a U.S. military laboratory to China for research purposes, since such research would have been illegal domestically. Comp. ¶ 9. As set forth in the Complaint, and in the attached affidavit of Dr. Mikovits, she had worked together intimately with Dr. Fauci in the past and had first hand knowledge of Dr. Fauci's role in proximately causing COVID-19 to be created by the Chinese government owned laboratory in Wuhan. Comp. ¶9, Comp. Ex. 1. Because Dr. Fauci is a favorite of many leftist media publications, such as CNN, Defendants stepped in to discredit anyone who would dare criticize Dr. Fauci in any way. Thus, the Darcy Article came about.

It is no coincidence that Mr. Klayman is the founder of both Judicial Watch and Freedom Watch, "conservative public interest groups that hold the leftist media legally accountable with its Leftist Media Strike Force, as well as corrupt government officials, lawyers, and judges…." Comp. ¶ 12.

Mr. Klayman's reputation is therefore of paramount importance, as a public interest attorney and advocate, as well as a private legal practitioner. By using their platform to very publicly and very falsely accuse Mr. Klayman of having a history of pushing misinformation and representing conspiracy theorists goes to the heart of Mr. Klayman's trade and profession as a public interest advocate and attorney, as well as a private litigator. Such a false accusation, as Mr. Klayman "pushing misinformation" is incredibly damaging, and destroys his ability to act as a public interest advocate and attorney, as well as a private litigator. Furthermore, Defendants' statement is a factual falsehood that permeates Mr. Klayman's entire legal practice and personal reputation. His  public interest group, Freedom Watch, Inc., that not only disseminates information but also brings law suits and Mr. Klayman's reputation  as its chairman and general counsel if paramount for telling and putting forth the truth.

## II.     LEGAL STANDARD

A motion to dismiss is designed to test the legal sufficiency of a complaint and not to determine any factual issues. *Dorleus v. Bank of New York*, No. 14-80124-CIV, 2014 WL 1621941, at *2 (S.D. Fla. Apr. 23, 2014); *see Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164 (1993). All allegations of the complaint must be taken as true and all reasonable inferences drawn therefrom must be construed in favor the non-moving party. *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC,* 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). A motion to dismiss a complaint is not a motion for summary

judgment in which the court may rely on facts adduced in other proofs. *Urquilla–Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1053 n. 12 (11th Cir.2015). Instead, a motion to dismiss tests the legal sufficiency of the complaint. *Dorleus*, No. 14-80124-CIV, 2014 WL 1621941, at *2 (S.D. Fla. Apr. 23, 2014).

A complaint "does not require detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009) (internal quotations omitted). To survive a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id*. (internal quotations omitted).

Finally, when considering a Rule 12(b)(6) motion, trial courts are generally limited to the four corners of the complaint and may only consider documents incorporated in the complaint—i.e., either documents attached to the complaint or documents which do not allege acts extrinsic to the pleadings. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009); *see also Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir.1997) (A court may consider only the complaint itself and any documents referred to in the complaint which are central to the claims.

**III.   LEGAL ARGUMENT**

Defendants Zucker and Darcy also moved to dismiss on the grounds of personal jurisdiction in another brief, which Mr. Klayman has responded to in a separate brief. This brief responds to ECF No. 6, which was filed on behalf of all the Defendants and is made under Fed. R. Civ. P 12(b)(6) for failure to state a claim.

**A.   Mr. Klayman Has More than Adequately Pled Defamation Causes of Action**

Under Florida law, the elements of defamation are "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public

3

official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Peerenboom v. Perlmutter*, 2017 Fla. Cir. LEXIS 14957, *24. To determine whether a statement is defamatory, it must be considered in the context of the publication. *Smith v. Cuban Am. Nat'l Found.*, 731 So.2d 702, 705 (Fla. 3d DCA 1999); *see also Carroll v. The Street.com, Inc.*, 2014 U.S. Dist. LEXIS 156499, *29 (S.D. Fla. 2014) (". . . the Court cannot view the defamatory remarks in a vacuum. It must view the [a]rticle as a whole.").

Furthermore, the Florida courts have found that a defendant may not escape liability for his defamatory conduct simply by attempting to couch his defamatory statement as an "opinion."

> However, a statement that although ostensibly in the form of an opinion "implies the allegation of undisclosed defamatory facts as the basis for the opinion," Restatement (Second) of Torts § 566 (1977), *is* actionable. The difference between the former, unactionable, pure opinion and the latter, sometimes called "mixed opinion," is that: "Pure opinion occurs when the defendant makes a comment or opinion based on facts which are set forth in the article or which are otherwise known or available to the reader or listener as a member of the public. Mixed expression of opinion occurs when an opinion or comment is made which is based upon facts regarding the plaintiff or his conduct that have not been stated in the article or assumed to exist by the parties to the communication."

*Barnes v. Horan*, 841 So. 2d 472, 476-77 (Fla. Dist. Ct. App. 2002).

### 1.   Mr. Klayman is Not a Public Figure

First and foremost, it is important to establish that Mr. Klayman is not a public figure. "Courts are to employ a two-step process in determining whether a particular claimant is a limited public figure or simply a private plaintiff. First, the court must determine whether there is a "public controversy." *Id.* In determining whether a matter is a "public controversy," the court should ask whether a reasonable person would have expected persons beyond the immediate participants in the dispute to feel the impact of its resolution." *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 845 (Fla. Dist. Ct. App. 2002). Here, there is no public controversy at issue, as falsely claiming that Mr. Klayman "has a history of pushing

misinformation and representing conspiracy theorists" does not impact anyone other than Mr. Klayman and his reputation.

However, even if there were a "public controversy," Mr. Klayman is still not a public figure. After determining that there is a "public controversy," the court must then determine whether the plaintiff played a sufficiently central role in the instant controversy to be considered a public figure for purposes of that controversy." *Mile Marker, Inc. v. Petersen Publ'g, L.L.C.*, 811 So. 2d 841, 846 (Fla. Dist. Ct. App. 2002).

Here, Mr. Klayman's involvement was not by choice, but instead forced by Defendants and.. Furthermore, it is abundantly clear that Defendants' false, malicious, and misleading statements essentially, such as by way of just one example have absolutely nothing to do with COVID-19, and were made simply to try to destroy Mr. Klayman's reputation.

Lastly, to the extent that the Court previously found Mr. Klayman to be public figure in *Klayman v. Judicial Watch, Inc.*, 22 F. Supp. 3d 1240, 1250 (S.D. Fla. 2014), *aff'd* (Feb. 17, 2015), such a finding is not binding on this current Court, under the current facts, as the Court must analyze the specific underlying facts here and whether there is a public controversy now, which, as shown above, there is not.

### 2.     Mr. Klayman Has More Than Pled Actual Malice

As set forth above, Mr. Klayman is not a public figure the purposes of this litigation, rendering a showing of malice unnecessary. However, even in the unlikely event that this Court finds that Mr. Klayman is a limited-public figure, it is clear that the Defendants acted with actual malice. Mr. Klayman specifically pled that each of the false and defamatory statements were made by Defendants <u>with malice</u> and actual knowledge of their falsity. "These false and misleading statements were published with actual malice, as Defendant CNN knew that they

5

were false and misleading, or at a minimum acted with a reckless disregard for the truth." Comp. ¶ 21.

Indeed, Mr. Klayman contacted the both Defendants Zucker and Darcy prior to filing suit asking them to provide evidence of Mr. Klayman's supposed "misinformation," but Defendants were unable and/or unwilling to provide any. Exhibit 1. This further shows that both Defendants Zucker and Darcy were personally involved in the publication of the false, malicious, and defamatory statements.

"[M]ost authorities suggest that a failure to retract, in conjunction with other circumstances, may be used to establish the requisite level of [constitutional] malice." John C. Martin, Comment, The Role of Retraction in Defamation Suits, 1993 U. Chi. Legal F. 293, 295 (1993); accord, e.g., *Tavoulareas v. Piro*, 817 F.2d 762, 794, 260 U.S. App. D.C. 39 (D.C. Cir. 1987) (*en banc*) (refusal to retract can be evidence of actual malice). Here, Mr. Klayman made demands for retraction pursuant to Florida Statute 770.01, and each and every Defendant refused to do so. Comp. ¶ 14. Furthermore, in these letters pursuant to Florida Statute 770.01, Mr. Klayman asked Defendants for their basis for their claim that he "has a history of pushing misinformation," and Defendants were unable to provide any credible information, evidencing the fact that they knew they were making false statements.

Whether the statements were published with actual malice is a question for the jury. *Southern Air Transport, Inc. v. Post-Newsweek Stations, Florida, Inc.*, 568 So.2d 927, 929 (Fla. App. 3 Dist. 1990). Actual malice includes publishing defamatory statements with reckless disregard for their truth or falsehood: "Second, we conclude, contrary to the trial court's finding, that the plaintiff produced sufficient evidence ... that the defendants ... uttered a defamatory falsehood ... with 'actual malice,' i.e., with knowledge that such accusation was false or with

6

reckless disregard of whether it was false or not. *Southern Air Transport, Inc*., at 928.

Here, it is clear that the false and defamatory statements at issue were made with, at a minimum, reckless disregard for the truth, if not actual knowledge of its falsity. For instance, Mr. Klayman is not "right wing." Mr. Klayman has sued both conservatives and liberals. *See Judicial Watch, Inc. v National Energy Policy Development Group,* 233 F. Supp. 2d 16 (2002). This is a matter of public record, and Defendants' false characterization of Mr. Klayman's public interest advocacy evidences a lack of even basic fact-checking and therefore a reckless disregard for the truth.

Furthermore, Defendants' statement that Mr. Klayman "has a history of pushing misinformation" and "representing conspiracy theorists" also were made with, at a minimum, reckless disregard for the truth, if not actual knowledge of its falsity. Indeed, Mr. Klayman also won landmark decisions at the chairman and general counsel of Freedom Watch enjoining the illegal mass surveillance by the National Security Agency. *Klayman v. Obama*, 1:13-cv-851 (D.D.C). This is not "misinformation" or a "conspiracy theory." Again, this is another matter of public record, which evidences the fact that Defendants failed to even do basic fact checking and therefore acted with reckless disregard for the truth.

### 3. The Specific Defamatory Statements

As set forth above, the Defendants published that Mr. Klayman is "a right-wing lawyer, has a history of pushing misinformation and representing conspiracy theorists." This statement is false and defamatory, and severely harms Mr. Klayman's reputation as a public interest attorney and advocate.

Defendants make the curious argument that this is simply a statement of "opinion" and that they are "substantially true." However, as set forth previously, a defendant may not escape

liability for his defamatory conduct simply by attempting to couch his defamatory statement as an "opinion." *Barnes*, 841 So. 2d 476-77. Here, Defendants make three factual statements about Mr. Klayman, each of which are false: that (1) Mr. Klayman is a "right wing" lawyer, (2) Mr. Klayman "has a history of pushing misinformation," and (3) Mr. Klayman has a history of "representing conspiracy theorists." Each of these are objectively verifiable facts and each of them are verifiably false.

Either Mr. Klayman is "right wing" or he is not. Defendants do not even attempt to couch this as opinion – they present this as a "fact." As shown above, Mr. Klayman is not "right wing," having sued both conservatives and liberals in the course of his public interest advocacy, for instance, having sued the Cheney Energy Task Force. This case went all the way to the U.S. Supreme Court.

Furthermore, either Mr. Klayman has a "history of pushing misinformation" or he does not. This is another objectively verifiable fact. Again, as shown above, Mr. Klayman's "history" includes landmark decisions at the chairman and general counsel of Freedom Watch enjoining the illegal mass surveillance by the National Security Agency. *Klayman v. Obama*, 1:13-cv-851 (D.D.C)." By failing to even acknowledge this fact, Defendants made false statements of fact that maliciously defamed Mr. Klayman.

Lastly, either Mr. Klayman has a history of "representing conspiracy theorists" or he does not. This is also objectively verifiable. Again, Mr. Klayman represented clients in *Klayman v. Obama*, 1:13-cv-851 (D.D.C) where he obtained relief enjoining illegal mass surveillance by the National Security Agency.

Crucially, at the motion to dismiss stage, all allegations of the complaint must be taken as true and all reasonable inferences drawn therefrom must be construed in favor the non-moving

8

party. *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC,* 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009). Mr. Klayman has expressly alleged that the statements by Defendants are false, and therefore this case must be allowed to proceed.

### 4. Defendant Zucker Ratified, Condoned, and Adopted the Defamatory Statements

With regard to Defendant Zucker specifically, the Complaint specifically alleges that he:

> caused, directed, and ratified the aforementioned false and defamatory published statements of Defendant Darcy and CNN, as Plaintiff Klayman specifically communicated with him after the defamatory statements were published and demanded that he remove them and issue a public apology to Mr. Klayman and Dr. Mikovits." He, and co-Defendants Darcy and CNN arrogantly and recklessly refused, all in line with their leftist agendas and ideology and anti-Trump hatred. Comp. ¶ 18.

Thus, Defendant Zucker ratified, condoned, and adopted the malicious, false, and defamatory statements pertaining to Mr. Klayman. This was a high-profile matter, involving the COVID-19 pandemic and Dr. Fauci, which means that it is nearly certain that Defendant Zucker was personally involved in the Darcy Article. Indeed, Mr. Klayman contacted the both Defendants Zucker and Darcy prior to filing suit asking them to provide evidence of Mr. Klayman's supposed "misinformation," but Defendants were unable and/or unwilling to provide any. Exhibit 1. This further shows that both Defendants Zucker and Darcy were personally involved in the publication of the false, malicious, and defamatory statements.

Accordingly, Defendants Darcy and Zucker are equally responsible for the Darcy Article, which was published, and accessed in Florida, and specifically this judicial circuit. Accordingly, Florida's long-arm statute is satisfied as to both Defendants Darcy and Zucker.

### 5. The Defamatory Statements Were Per Se Defamatory

Statements are "defamatory per se," recognized under Florida law when statements are so powerful in their ability to hurt someone that Florida law presumes harm as a matter of law.

9

*Montgomery v.* Knox*,* 23 Fla. 595, 3 So. 211, 217 (1887), such that a judge will allow damages to be awarded in these cases even if no evidence of harm has been presented. "[T]he law presumes malice in their utterance," Abraham v. Baldwin, 52 Fla. 151, 42 So. 591, 592 (1906), where the words are "… of such common notoriety established by the general consent of men, that the courts must of necessity take judicial notice of its harmful effect." *Layne v. Tribune Co*., 108 Fla. 177, 146 So. 234, 236 (1933**)**. Statements are *per se* defamatory if they imputes to another "conduct, characteristics or a condition incompatible with the proper exercise of his lawful business, trade, profession or office." *Wolfson v. Kirk,* 273 So. 2d 774, 777 (Fla. Dist. Ct. App. 1973).

Here, Mr. Klayman is a public interest attorney and advocate. Thus, his reputation, and the reputations of his clients are of the utmost importance. By falsely spreading the lies that Mr. Klayman is "right wing,' 'has a history of pushing misinformation," and has a history of "representing conspiracy theorists," Defendants have severely harmed his ability to work as a public interest advocate and attorney. With these stains to his reputation, which Defendants have refused to correct, Mr. Klayman has been defamed *per se*.

### III.    CONCLUSION

Based on the foregoing, Mr. Klayman respectfully requests that Defendants' motion to dismiss be denied, as they have clearly defamed Mr. Klayman, as shown conclusively in the Complaint and above.

Dated: February 25, 2021                                              Respectfully Submitted,

*/s/ Larry Klayman*
Larry Klayman, Esq.
7050 W. Palmetto Park Rd
Boca Raton, FL, 33433
Telephone: (561)558-5336

Email:leklayman@gmail.com

*Pro Se*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of February, 2021, a true copy of the foregoing was filed via ECF and served to all counsel of record though the Court's ECF system.

*/s/ Larry Klayman*